Noel Zeona STONE, Plaintiff,

v.

Ward Herbert STONE, Seafarers International Union, Pacific District, Pacific Maritime Association Pension Plan, Does One through Five, Defendants.

No. C–77–1124–CBR.

United States District Court, N. D. California.

April 18, 1978.

Dennis R. Pedersen, Walnut Creek, Cal., for plaintiff.

Dennis Daniels, Ernst & Daniels, John Paul Jennings, Jennings, Gartland & Tilly, San Francisco, Cal., for defendant Pension Plan.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

The major issue in this lawsuit is whether the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1381, preempts California community property laws to the extent that they require employee benefit plans subject to ERISA to pay part of a participant's benefits to his [1] divorced spouse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1973, plaintiff Noel Zeona Stone ("Noel") instituted divorce proceedings against her husband, defendant Ward Herbert Stone ("Ward"), in the California Superior Court for the County of Alameda in the Northern District of California. On September 25, 1974, the Superior Court entered an Interlocutory Judgment of Dissolution of Marriage, and that court entered a final judgment on October 17, 1974, dissolving the marriage and dividing the couple's community property according to the terms of the interlocutory decree. One community asset was a monthly pension of $425.00 which defendant Seafarers International Union, Pacific District—Pacific Maritime Association Pension Plan (the "Pension Plan") had paid Ward since 1970 when he retired from employment covered by the Plan.[2] Under the terms of the interlocutory and final divorce decree, the community property interest in these pension benefits was divided as follows:

"The community property interest of the parties in the pension being received by the respondent is 80%, and accordingly 40% of the pension is to be paid to the petitioner, which at the present rate of payment of $425.00 is to be $170.00 per month to the petitioner with the petitioner accepting the tax consequences of said payment."

Noel alleges that between the end of 1974 when she obtained her divorce and May 3, 1977, when she filed this action in the California Superior Court for the County of Alameda, Ward failed to comply with his obligations under the terms of the divorce decree. Until May 3, 1977, Noel made no effort to notify the Pension Plan of its alleged obligation to pay 40% of Ward's monthly pension directly to her, although she did try unsuccessfully to join the Pension Plan by moving in 1976 to modify the final judgment. The Pension Plan first received written notification of Noel's claim against the Plan on May 9, 1977, when it received in the mail a copy of the summons and complaint in Noel's enforcement action in Superior Court.

On May 25, 1977, the Pension Plan filed a petition for removal of Noel's civil action from the Superior Court, together with a supporting bond. Noel has not moved to remand this action to state court.

At a status conference on July 28, 1977, Noel and the Pension Plan agreed to file cross-motions for summary judgment. Pursuant to that agreement, they entered into a stipulation concerning the material facts. After the parties briefed the issues, the Court heard oral argument on October 13, 1977, and took the motions under submission. On November 30, 1977, the Court sent a letter to counsel for Noel and the Pension Plan requesting them to address two additional issues: whether the division of Ward's and Noel's community property by the Superior Court became effective before or after January 1, 1975; and whether the divorce decree required the Pension Plan to pay directly to Noel her 40% share of the pension benefits. Both Noel and the Pension Plan have responded to this request.

On February 3, 1978, Noel filed a motion for default judgment against Ward after Ward failed to respond to summons mailed to his last known address and printed in a local newspaper of general circulation on six separate occasions.

---

1. Throughout this opinion, the Court will generally use the masculine to refer to a participant in a benefit plan and the feminine to refer to the spouse of a participant, because the participant in this case is the husband and the spouse the wife.

2. The parties have stipulated that the Pension Plan is maintained by employers engaged in commerce and by a labor organization representing employees engaged in commerce and is therefore covered by ERISA under § 4(a), 29 U.S.C. § 1003(a).

Having considered the written and oral arguments of counsel, the Court grants Noel's motion for summary judgment against the Pension Plan. In addition, the Court remands Noel's action against Ward to the Superior Court for the County of Alameda.

## II. *JURISDICTION UNDER ERISA*

This action was removed to this Court pursuant to 28 U.S.C. § 1441(a), which authorizes the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." [3] This Court therefore has jurisdiction only if Noel could have brought suit in federal court to enforce her right under the terms of the divorce decree to part of the pension benefits. Although the parties have not addressed this issue, the Court has an independent duty to determine whether it has subject-matter jurisdiction. *Wong v. Bacon*, 445 F.Supp. 1177, 1182 (N.D.Cal.1977).

■ Intervention in divorce proceedings by federal courts involves them in state domestic relations law, an area traditionally and wisely left to state courts. *See* cases cited at pp. 924–925, *infra*. Exercise of federal jurisdiction over Noel's action against the Pension Plan is authorized by federal statute and creates none of the problems which this noninterventionist policy is designed to avoid.

The cause of action of a nonemployee spouse against a benefit plan for benefits awarded by a state court in a divorce action

has two elements: (1) that the employee spouse had a right under the terms of the plan to receive benefits; and (2) that this right was validly transferred to his spouse by the divorce decree. Proof of neither of these elements requires federal courts to intrude into state domestic relations law.

The first element of the nonemployee spouse's cause of action does not involve state domestic relations law at all. Under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a participant of a pension plan [4] like Ward has a right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan * * *." Section 502(e)(1), 29 U.S.C. § 1132(e)(1), gives a participant the right to bring this action in federal courts, which have jurisdiction concurrent with state courts in § 502(a)(1)(B) actions.[5] If a participant's cause of action under § 502(a)(1)(B) is transferable to his spouse by operation of state community property laws (*see* n.17, *infra*), federal courts have original jurisdiction over § 502(a)(1)(B) suits brought by nonemployee spouses who were awarded benefits in state divorce actions.

Only the second element of the nonemployee spouse's cause of action, proof of a completed transfer of her husband's rights against the benefit plan to her, has even the potential to involve federal courts in state domestic relations law. However, their actual involvement is in fact slight.

---

**3.** Section 1441(a) provides:

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

**4.** Section 3(7), 29 U.S.C. § 1002(7), defines a participant as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or mem-

bers of such organization, or whose beneficiaries may be eligible to receive any such benefit." Throughout this Memorandum of Opinion, the Court uses this term in its technical meaning.

**5.** Section 502(e)(1) provides:

"Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

A nonemployee spouse with a present interest in benefits must be able to sue a benefit plan to enforce that interest. If she could not, she would have no remedy for any kind of wrongful failure by the plan to pay benefits to her. A plan's failure could be wrongful not only because of a good-faith but erroneous belief that ERISA preempts·state community property laws (as in this case), but also because of a willful, intentional violation by the trustees of their fiduciary duties. In other words, the plan's failure to pay could have nothing to do with the claimant's status as a nonemployee spouse.

The nonemployee spouse's right to sue should not depend on the nature of the reason for the plan's failure to pay her. If the existence of a federal cause of action depended on the defense, a federal court could not know whether it had jurisdiction until the plan answered the complaint, and the well-pleaded complaint rule, which makes federal jurisdiction depend on the complaint, was designed to avoid just this kind of uncertainty and confusion. *See Wong v. Bacon, supra,* 445 F.Supp. 1177; 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3566 (1975) (hereinafter cited as Wright, Miller & Cooper). To deny a nonemployee spouse awarded benefits in a divorce action the right to sue under § 502(a)(1)(b) leaves her dependent on the willingness of her spouse to sue the plan or its trustees on her behalf, which the spouse has little or no incentive to do.

The right of a nonemployee spouse with an interest in benefits to sue a benefit plan

does not, however, give her a right to seek a division of community property in federal court whenever pension benefits allegedly constitute a community asset. Federal courts need not become involved in any prospective divisions of community property. That is, until the community property has been divided by court decree or by property settlement, the nonemployee spouse has no enforceable interest in benefits and no enforceable right against the plan. So long as the employee spouse shares equally the management and control of personal community property with his wife during their marriage, Cal.Civ.Code § 5125, she has no separate or superior right to receive all or part of the benefits and no right to sue to enforce this undetermined and inchoate right.

Consequently, a federal court need not decide how community property should be divided under state domestic relations laws. It need decide only how such property has previously been divided by court order or property settlement. That determination involves state contract law more than state community property law because the interpretation of a divorce decree as well as a property settlement depends on the intent of the parties. *In re Marriage of Verner,* 77 Cal.App.3d 718, 143 Cal.Rptr. 826, 830 (1978).[6]

Any suit by a nonemployee spouse to obtain management and control of a community asset would not arise under federal law, and federal courts would therefore lack subject-matter jurisdiction.[7] The non-

6. Although the language of the interlocutory decree is ambiguous and although Noel's delay of more than two years after entry of the decree in notifying the Pension Plan of its obligation to her suggests that the decree required only that Ward pay part of his pension benefits to Noel as he received them, the Court concludes that the decree transferred Ward's right to 40% of the pension benefits to Noel and that Noel could therefore enforce the obligation directly against the Pension Plan. When the state court transferred Ward's right to 40% of his pension benefits to Noel, it transferred as well Ward's federal cause of action to enforce that right. *See* n.17, *infra.* Although joinder of the Pension Plan would have been possible,

*In re Marriage of Sommers,* 53 Cal.App.3d 509, 126 Cal.Rptr. 220, 223 (1975), it was not necessary. Cal.Civ.Code § 5106, which discharges plans from liability to pay the transferee of an interest in benefits until the plan receives written notice, clearly contemplates that a transfer can be effective without joining a plan in some litigation. Sending written notice to the pension plan is indeed preferable to joinder because it places less of a burden on the pension plan and protects the spouses to an equal degree.

7. Because of the domestic relations exception, federal courts do not have jurisdiction over marital disputes by reason of diversity of citizenship. *Crouch v. Crouch,* 566 F.2d 486, 487

employee spouse's right to acquire an interest in her spouse's benefits is created solely by state law, as are all spousal rights. Even if ERISA preempts some of her spousal rights, it does not replace those rights with any federally created spousal rights. That ERISA permits states to create a cause of action for benefits does not mean that the cause of action arises under federal law. *See Gully v. First National Bank*, 299 U.S. 109, 116, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Even if a preemption defense were valid, a federal court does not acquire jurisdiction over a state cause of action merely because the defendant might raise a federal defense. *E. g. Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–128, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); 13 Wright, Miller & Cooper, *supra*, § 3566, at 435 n.9.

Nor can a defendant who has a federal defense to a state cause of action remove a lawsuit brought under state law in state court because only those cases that could be brought initially in federal court can be removed under 28 U.S.C. § 1441(a). *Gully v. First National Bank, supra*, 299 U.S. at 116, 57 S.Ct. 96; *State of Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654, 660 (9 Cir. 1972); *Wong v. Bacon, supra*, 445 F.Supp. at 1183; *Borzello v. Charles D. Sooy & C. Darrell Sooy*, 427 F.Supp. 332, 335 (N.D.Cal.1977); *State of New York v. Local 1115 Joint Board, Nursing Home & Hospital Employees Division*, 412 F.Supp. 720, 723–724 (E.D.N.Y. 1976). A divorce action therefore cannot be removed by a benefit plan which is joined as a defendant because it possesses community property subject to the jurisdiction of the state court conducting the proceedings. *See In re Marriage of Sommers*, 53 Cal. App.3d 509, 126 Cal.Rptr. 220, 223 (1975) (joinder of benefit plans).

This case and *In re Marriage of Pardee*, 408 F.Supp. 666 (C.D.Cal.1976), are therefore consistent in their results. In *Pardee*, the court remanded a divorce action removed by a pension plan because the asserted federal claim was not separate and independent from the state action within the meaning of 28 U.S.C. § 1441(c).[8] Insofar as *Pardee* holds that a federal claim is not removable under § 1441 unless the claim is separate and independent from state claims joined with it, the Court respectfully declines to follow it. Unlike the court in *Pardee*, this Court finds it necessary to decide whether the nonemployee spouse has a claim against the Pension Plan upon which relief may be granted under federal law. If the complaint states a federal cause of action, at least that claim is removable. Both the pendent jurisdiction doctrine and § 1441(c) allow federal courts to remand to state courts state claims over which federal courts have no independent jurisdictional basis and which are joined with federal claims within federal court jurisdiction. *See* p. 933, *infra*. But federal courts lack discretion to remand to state courts federal claims properly before them because the federal claims happen to be joined with such state claims.

### III. PREEMPTION BY ERISA

A state divorce decree requiring the Pension Plan to pay directly to Noel part of the pension benefits due to Ward under the terms of the plan may be invalid under federal law under either of two theories: (1) that the award of part of the benefits to a nonemployee spouse is an assignment or alienation of benefits prohibited by § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1); or (2) that California's community property laws relate to employee

---

(5 Cir. 1978); *Buechold v. Ortiz*, 401 F.2d 371, 372 (9 Cir. 1968). If federal courts lack federal-question jurisdiction over such disputes, they lack all subject-matter jurisdiction.

**8.** Section 1441(c) provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

benefit plans within the meaning of § 514(a) of ERISA, 29 U.S.C. § 1144(a), and are therefore preempted.

### A.  Conflict with. § 206(d)(1)

A state law which conflicts with a federal law is invalid under the Supremacy Clause of the United States Constitution. The Pension Plan argues that an award of a community interest in pension benefits to a nonemployee spouse constitutes an assignment or alienation of benefits within the . meaning of § 206(d)(1) of ERISA and that such an award therefore conflicts with that section's prohibition of such assignments and alienations.[9]

A conflict between state and federal statutes exists "where the state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'  *Hines v. Davidowitz,* 312 U.S. 52, 67 [61 S.Ct. 399, 85 L.Ed. 581] (1941); *Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 540–541 [97 S.Ct. 1305, 51 L.Ed.2d 604] (1977)."  *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978).  Courts try to give federal statutes interpretations consistent with state domestic relations policy.  Because Congress generally drafts statutes in a way that avoids conflict with state domestic relations law, courts interpret them with the presumption that Congress did not intend to interfere with the operation of that body of state law.  *See id.,* at 157, 98 S.Ct. 988, *quoting Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), and citing *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51

L.Ed.2d 604 (1977).  Both Congress and the courts recognize that " ' "the whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." ' "  *Buechold v. Ortiz,* 401 F.2d 371, 372 (9 Cir. 1968), *quoting Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930).  Congress does not infringe *sub silentio* "the power to make rules to establish, protect, and strengthen family life [which] is committed by the Constitution of the United States  *  *  *  to the legislature of [each state]."  *Labine v. Vincent,* 401 U.S. 532, 538, 91 S.Ct. 1017, 1021, 28 L.Ed.2d 288 (1971).

The strength of this rule of statutory construction is demonstrated by the willingness of courts to infer exceptions from statutory rules in order to avoid conflicts with state domestic relations laws.  Even before Congress made a statutory exception for spousal and child support obligations from the general rule that all claims against a debtor are dischargeable in bankruptcy, the Supreme Court inferred an exception. *Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 49 L.Ed. 390 (1904).  Similarly, even when Congress gave federal employees extremely broad control over the benefits they earned, courts inferred exceptions for claims by nonemployee spouses and dependents for child and spousal support.  *See* cases cited in *Wissner v. Wissner,* 338 U.S. 655, 659, 70 S.Ct. 398, 94 L.Ed. 424 (1950) (National Service Life Insurance Act).  The correctness of this heavy presumption that Congress does not interfere with the work-

---

9. Section 206(d) provides:

"(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

"(2) For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974. The preceding sentence shall not apply to any assignment or alienation made for the purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be 'treated as an assignment or alienation if such loan is secured by the participant's ac-

crued nonforfeitable benefit and is exempt from the tax imposed by section 4975 of Title 26 (relating to tax on prohibited transactions) by reason of section 4975(d)(1) of Title .26."

Although under 29 U.S.C. § 1061(b)(1) the anti-assignment provision need not be adopted prior to January 1, 1976, the pension plan must comply with the substance of the anti-assignment rule after the enactment date, September 2, 1974. H.Conf.Rep.No. 93–1280, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Adm.News 5038, 5061, n.4. Since the transfer of the 40% interest in the pension benefits occurred after that date, the transfer is invalid if it conflicts with § 206(d)(1)'s prohibition of assignments and alienations.

ings of state domestic relations law is illustrated by the eventual decision of Congress to create explicit exceptions in both these situations. *See* 11 U.S.C. § 35(a)(7) (Bankruptcy Act); 42 U.S.C. § 659(a) (benefits of federal employees).

This policy of federal noninterference with state domestic relations laws means that a federal court does not construe a federal statute to preempt one of those laws unless "positively required by direct enactment," *Wetmore v. Markoe, supra,* 196 U.S. at 77, 25 S.Ct. 172, or, in other words, " 'unless that was the clear and manifest purpose of Congress.' " *Ray v. Atlantic Richfield Co., supra,* 434 U.S. at 157, 98 S.Ct. at 994, *quoting Rice v. Santa Fe Elevator Corp., supra,* 331 U.S. at 230, 67 S.Ct. 1146. The relationship between § 206(d)(1) and California community property law must be evaluated against this background.

■ Section 206(d)(1) prohibits most voluntary and involuntary transfers of benefits from the employee who has earned them in order to "ensure that the employee's accrued benefits are actually available for retirement purposes * * *." H.Rep.No. 93–807, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 4670, 4734. In other words, § 206(d)(1) generally requires the payment of benefits only to a participant in a pension plan or to a beneficiary designated by him or by the terms of the plan.[10] Application of the community property laws results in the payment of benefits to a third person who is neither a participant nor a beneficiary. In other contexts, Congress has treated the community property laws as effecting a seizure of benefits, *see Wissner v. Wissner, supra,* 338 U.S. at 659, 70 S.Ct. 398 (interpretation of provision exempting benefit payments from "attachment, levy, or seizure"), and for purposes of § 206(d)(1), "a garnishment or levy is not to be considered a voluntary assignment." H.Conf.Rep.No. 93–1280, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 5038, 5061. It is at least

possible that Congress used the terms assignment and alienation in § 206(d)(1) to include the transfer of benefits under community property laws, and the interests of the employee that § 206(d)(1) is designed to protect are implicated by recognizing a community property interest in pension benefits.

The possibility of a conflict between California community property law and § 206(d)(1) therefore cannot be avoided by categorizing a community property interest as an ownership rather than a creditor interest. Provisions in state and federal statutes analogous to § 206(d)(1) have been held not to defeat community property claims because a nonemployee spouse acquires an interest in community assets not as a creditor or assignee but as an owner, and "[t]he recognition of an ownership claim cannot be described as the levy of execution, garnishment, attachment or assignment of property." *Phillipson v. Board of Administration,* 3 Cal.3d 32, 89 Cal.Rptr. 61, 68, 473 P.2d 765, 772 (1971) (award to nonemployee spouse of community property interest in matured rights to state pension does not constitute assignment, execution, garnishment, or attachment prohibited by state pension law); *see In re Marriage of Hisquierdo,* 19 Cal.3d 613, 139 Cal.Rptr. 590, 592 & n.2, 566 P.2d 224 (1977) (same principle applied to federal benefit statutes with creditor exemption provisions), *petition for cert. filed,* 434 U.S. 963, 98 S.Ct. 500, 54 L.Ed.2d 448 (1977). This mode of analysis focuses on whether the nonemployee spouse's claim is an ownership or creditor interest, but the characterization of the interest under state property law does not affect the degree of conflict with the purposes of the federal statute, which determines whether state law is preempted. If the characterization under state property law were dispositive, a spouse entitled to a fair and equitable share of marital property in a non-community property state (*see* p.

---

**10.** The definition of participant in § 3(7) is set forth in note 4, *supra.* Section 3(8), 29 U.S.C. § 1002(8), defines the term "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or

may become entitled to a benefit thereunder." For the sake of simplicity, the Court assumes throughout the following discussion that pension benefits go to a participant rather than a beneficiary.

931, *infra*) could not collect benefits if the law of that state did not recognize a pre-existing ownership interest as California law does. The substance of the spousal claim to marital property conflicts no more or no less with § 206(d)(1) because of the form in which it is asserted.

Section 206(d)(1) does not explicitly prohibit the transfer of pension benefits under state community property laws, and the plain meaning of the terms assignment or alienation does not include such a transfer. Nor does the legislative history of ERISA clarify this ambiguous language. H.Rep.No. 93–807, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 4670, 4695, 4734; H.Conf.Rep.No. 93–1280, 93d Cong., 2d Sess., *id.*, at pp. 5038, 5061. The Court must therefore rely primarily on an analysis of policy considerations in interpreting § 206(d)(1). *See Williams v. Dept. of Social & Health Services, State of Washington,* 529 F.2d 1264, 1271 (9 Cir. 1976). More specifically, the Court must compare the interest in benefits which the nonemployee spouse has under the community property laws with the interest in benefits asserted by other claimants. If Congress could have had no discernible reason to treat those kinds of interests differently, its clear intent to prohibit the transfer of one kind of interest demonstrates its intent to prohibit the transfer of the other kind. If, on the other hand, the relative interests of husband and wife differ from the relative interests of participant and other claimants, no basis to infer a clear congressional intent to preempt community property laws exists.

The payment of benefits to a nonemployee spouse in satisfaction of her community property claim does not conflict with the purposes of § 206(d)(1). Members of the families of employees are included in the class which ERISA protects. The basic purpose of ERISA is to protect the literally millions of people who depend on benefits from private pension plans for financial independence after retirement. H.Rep.No. 93–533, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 4639, 4640–4641; S.Rep.No. 93–127, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 4838,

4839–4840. Congress was concerned not only about the workers themselves whose employment entitles them to benefits. Congress was also concerned about the families of those workers who depend to the same degree on the actual availability of those benefits. It would be ironic indeed if a provision designed in part to ensure that an employee spouse would be able to meet his obligations to family after retirement were interpreted to permit him to evade them with impunity after divorce. Construing § 206(d)(1) to prevent a nonemployee spouse from enforcing marital property obligations against an employee benefit plan covered by ERISA would frustrate rather than further the policies of that provision.

This factor distinguishes community property claims of nonemployee spouses from the claims of business creditors, who are not members of the family unit protected by ERISA. In addition, nonemployee spouses are more likely to be dependent on their share of pension benefits than a business creditor with a variety of customers who own a variety of assets which can be used to satisfy their debts. The nonemployee spouse has a unique and protected interest in obtaining her fair share of pension benefits.

A second reason to conclude that ERISA treats community property interests differently from other claims against benefits is that the nonemployee spouse cannot minimize her losses if her husband fails to honor his obligations to her. The insulation by ERISA of a substantial community asset from her community property claims if the marriage ends in divorce should not lead the nonemployee spouse to anticipate (and perhaps precipitate) that event by limiting her contributions to the marital partnership. The right of an employee to collect a pension from a plan covered by ERISA should encourage, not discourage, a prospective spouse to marry him. Unfortunately, the refusal of spouses to honor their marital obligations after divorce is not an uncommon occurrence, and in cases where pension benefits are the primary or sole

community asset, the nonemployee spouse gets none of her community property unless she can collect benefits directly from the pension plan.[11]

This unavoidable vulnerability of nonemployee spouses contrasts with the position of business creditors. Depriving business creditors of recourse against this kind of asset is fair, because they have " 'only themselves to blame for extending credit to a person whose interest under the [benefit plan] had been put beyond their reach' " without first ascertaining the extent and character of the debtor's resources. *United Mine Workers v. Boyle,* 418 F.Supp. 406, 411 (D.D.C.1976) (analogous principle for spendthrift trusts), *aff'd,* 567 F.2d 112 (D.C.Cir. 1977), *cert. denied, sub nom. Antal v. Boyle,* —— U.S. ——, 98 S.Ct. 1589, 55 L.Ed.2d 808 (1978). The nonemployee spouse's need for recourse against pension benefits is therefore substantially stronger than the need of other creditors.

Balanced against the interest of the nonemployee spouse in collecting pension benefits is the interest of the participant in keeping them all for himself, but his claim is not superior to his wife's. Although the employee spouse may have assumed the obligation to provide the money to support the couple, the nonfinancial contributions of a nonemployee spouse are no less essential or valuable to a marriage, and ERISA does not reject the basic premise of the community property laws that each partner in a marriage deserves an equal share of all marital assets because each made their acquisition possible. *See* pp. 930–931, *infra.* The nonemployee spouse earned those pension benefits no less than her husband, and to allow the husband to keep them all would give him a windfall gain at the expense of his wife. The employee spouse may have to make sacrifices in order to honor his obligation to his wife under the community property laws, but Congress deferred to the decision of the states that this sacrifice is necessary and proper.

In some cases the award of community property to the nonemployee spouse goes far beyond the needs of reasonable support. In those cases, it is legitimate to ask "why the obligee spouse should be treated differently from other creditors of the husband as to that portion of the debt which goes beyond support." Branca, *Dischargeability of Financial Obligations in Divorce: the Support Obligation and the Division of Marital Property,* 9 Fam.L.Q. 405, 434 (1975). However, few couples accumulate so large an estate, and in those cases, the value of the property allocated to the employee spouse as well as the nonemployee spouse would necessarily be substantial. An employee spouse in that situation depends on pension benefits for his own support after retirement to a limited degree at best. Most community property settlements do not make either spouse wealthy. A construction of § 206(d)(1) which preempted community property laws would protect a small and relatively undeserving minority of employee spouses at the expense of a large and relatively deserving majority of nonemployee spouses.[12]

---

11. Defendant contends that the divorce court could, in such cases, order the employee spouse to pay his wife her share of the benefits as he received them and that this approach is consistent with its interpretation of ERISA. This approach assumes, however, that the benefits can be included in a valuation of the couple's community property, which would be improper if ERISA intends to give the employee spouse the entire value of his benefits. This approach is also ineffective in cases where the employee spouse fails to comply with his obligations and places himself beyond the reach of process— cases apparently somewhat analogous to this one. As the Pension Plan itself concedes, this alternative would "foreclose the simplest available method for ensuring compliance with the state court order."

12. Even if ERISA prohibits a transfer of the benefits themselves to a nonemployee spouse, it may permit her to be compensated with community property of equal value to her community property interest in pension benefits provided that those other community assets have sufficient value. *See In re Marriage of Milhan,* 13 Cal.3d 129, 117 Cal.Rptr. 809, 528 P.2d 1145 (1974), cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975) (National Service Life Insurance Act); Thiede, The Community Property Interest of the Non-Employee Spouse in Private Employee Retirement Benefits, 9 U.S.F. L.Rev. 635, 650 (1975). That approach, how-

It is true that if a nonemployee spouse's interest in community assets is insufficient to support her after divorce, she is entitled to support payments out of the separate property of her husband. *See, e. g.,* Cal. Civ.Code § 4801. The nonemployee spouse can satisfy her essential needs if she can enforce an order of spousal support directly against the pension fund. Congress and the courts have always preserved the enforceability of support obligations. *See* p. 924, *supra; but see Ogle v. Heim,* 69 Cal.2d 7, 69 Cal.Rptr. 579, 442 P.2d 659 (1968) (right to child support unenforceable against state pension plan); *Miller v. Superior Court,* 69 Cal.2d 14, 69 Cal.Rptr. 583, 442 P.2d 663 (1968) (right to alimony unenforceable against state pension plan). ERISA certainly did not depart from this uniform pattern and preempt spousal support laws.

However, neither ERISA nor the state spousal support laws are intended only to ensure that a nonemployee spouse will have minimal support necessary for survival. ERISA protects the interest in pension benefits even if the family unit will not be destitute without them. Furthermore, spousal support provides more than the basic, irreducible essentials of life. A divorced spouse is entitled to support sufficient to enable her to maintain the life style which she enjoyed before the divorce, *In re Marriage of Wright,* 60 Cal.App.3d 253, 131 Cal.Rptr. 870, 871 (1976) (support order reasonable in light of "the free-spending lifestyle to which the parties had been accustomed"); *In re Marriage of Siegel,* 26 Cal. App.3d 88, 102 Cal.Rptr. 613, 615–616 (1972); Cal.Civ.Code § 4801(a)(7), and the

style to which she is accustomed may be far more luxurious than the style to which she could become accustomed if required to do so. The distinction between support and property obligations has collapsed to the point that at least in Indiana, " 'alimony serves a dual purpose—a method to aid in the equitable distribution of property and a method to provide continued maintenance or support if deemed appropriate.' " *Nichols v. Hensler,* 528 F.2d 304, 308 (7 Cir. 1976), *quoting Wellington v. Wellington,* 158 Ind.App. 649, 304 N.E.2d 347, 353 (1974).

There is a continuum between property and support obligations.[13] Even though it may be accurate as a broad generalization that nonemployee spouses have a greater need for support than for their share of community property, that fact does not mean that ERISA treats these two kinds of obligations differently. The question is whether the interest of the nonemployee spouse in a fair division of community property (even assuming that it is less than her interest in support) is greater than her husband's interest in keeping pension benefits for himself. For the reasons discussed at pp. 926–927, *supra,* the interest of the nonemployee spouse prevails.

This conclusion is sound despite the fact that some federal laws treat spouses asserting community property claims like business creditors and not like spouses asserting claims for support. Under the Bankruptcy Act, a bankrupt can have debts arising out of his community property obligations discharged even though spousal and child sup-

---

ever, fails to protect the nonemployee spouse in the many cases where pension benefits constitute the major community asset, and it gives her protection only in those instances where she needs it the least because she is least dependent on her interest in those benefits.

Application of the *Milhan* approach is preferable where feasible because like ERISA, it furthers the employee spouse's interest in receiving the benefits himself. In fact, California courts do just that. *Phillipson v. Board of Administration, supra,* 89 Cal.Rptr. at 70, 473 P.2d 765.

**13.** Differences between the division of property and the payment of support of course remain.

The categorization of the obligation affects its modifiability in light of changed circumstances and its enforceability through the sanction of contempt. *See Goggans v. Osborn,* 237 F.2d 186, 189, 16 Alaska 451 (9 Cir. 1956); *but see In re Marriage of Verner,* 77 Cal.App.3d 718, 143 Cal.Rptr. 826, 833–834 (1978) (contempt sanction for breach of property as well as support obligation) (dictum); *In re Marriage of Fithian,* 74 Cal.App.3d 397, 141 Cal.Rptr. 506, 510–511 (1977). Federal law recognizes certain differences in bankruptcy and tax proceedings. *See* 11 U.S.C. § 35(a)(7); 26 U.S.C. §§ 71(a) and 215.

port obligations are nondischargeable. *E. g., Nichols v. Hensler, supra,* 528 F.2d at 307; *Jones v. Tyson,* 518 F.2d 678, 680 (9 Cir. 1975). More analogous to ERISA is the federal statute governing execution and garnishment of federal pension benefits. Although spouses and children can proceed against government benefit plans to enforce the legal obligations of government employees "to provide child support or make alimony payments," 42 U.S.C. § 659(a), Congress specifically excepted payments "in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 662(c), Tax Reduction and Simplification Act of 1977, Pub.L. 95–30, § 501, 91 Stat. 126 (1977); *see Wissner v. Wissner, supra,* 338 U.S. at 659–660, 70 S.Ct. 398 (same result through judicial construction of National Service Life Insurance Act).

The Court cannot, however, determine whether the rationale of these statutes extends to private pension plans as well as federal governmental ones. Section 659 was a part of the Social Services Amendments of 1974 which included no provision defining its terms. Pub.L. 93–647, § 101(a), 88 Stat. 2357 (1975). A rider which included § 662(c) was added to the Tax Reduction and Simplification Act of 1977 on the floor of the Senate in order to fill that gap. Neither the committee reports of the 1975 legislation, S.Rep.No. 93–1356, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin. News, pp. 8133, 8157; Conf.Rep.No. 93–1643, 93d Cong., 2d Sess., *id.,* p. at 8161; nor the committee reports of the 1977 legislation, Conf.Rep.No. 95–263, 95th Cong., 1st Sess., 1977 U.S.Code Cong. & Admin.News, pp. 185, 287; nor the sponsor of the provision which became § 662(c), 123 Cong.Rec. S–6723 (remarks of Sen. Nunn) and S–6727

(explanation of provision) (April 29, 1977), explained why nonemployee spouses could not collect community property obligations from federal pension plans. ERISA exempts governmental plans from its coverage, § 4(b)(1), 29 U.S.C. § 1003(b)(1), and Congress might well be more reluctant to eliminate community property interests in private pension benefits than in governmental benefits. Private benefit plans cover more workers and pay more in benefits than governmental plans, so preemption of state community property laws with respect to private pension benefits would disrupt state marital property law to a much greater degree than preemption with respect to governmental benefits. Although 42 U.S.C. §§ 659(a) and 662(c) and § 206(d)(1) of ERISA could conceivably be read *in pari materia,* Congress' action in a related field is not a direct enactment which positively requires this interpretation of § 206(d)(1) and which is essential to a finding of preemption in these circumstances.[14]

Even if it were theoretically desirable to except only support obligations and not community property obligations from the general rule against transferability of pension rights, the cost of implementing that rule is prohibitive. When couples get divorced, the division of property which they agree to or which the divorce court imposes usually settles both the claims for support and the claims for community property. Although the distinction between support obligations and property division may be clear in theory, "[i]n practice the distinction between the two is often ignored by the courts and by the parties themselves." Branca, *Dischargeability of Financial Obligations in Divorce: the Support Obligation and the Division of Marital Property,* 9 Fam.L.Q. 405, 414 (1975). The imprecise

14. *Wissner v. Wissner, supra,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 is not to the contrary. In *Wissner,* the Supreme Court concluded that California's community property law conflicted with a provision of the National Service Life Insurance Act that exempted payments of benefits from the claims of creditors and from legal and equitable process. *Wissner* involved a governmental benefit plan which involves dif-

ferent considerations than private plans. Perhaps more importantly, in the National Service Life Insurance Act, "Congress ha[d] spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." *Id.,* at 658, 70 S.Ct. at 400. In ERISA, Congress made no similar expression of its intent.

and conflicting criteria for allocating portions of the property settlement between support and property division can be extremely difficult. *Id.*, at 413–431; *In re Smith*, 436 F.Supp. 469 (N.D.Ga.1977). This allocation almost inevitably involves factual disputes and uncertainty, *see Nichols v. Hensler, supra*, 528 F.2d at 308–309 (allocation improper on summary judgment motion), so courts would have to take evidence concerning all the varied factors which determine the amount of a support award [15] in order to determine how much the nonemployee spouses needed and deserved for support. Not only does this kind of litigation place another burden on the already overburdened federal court system, but it drains the resources of the parties.

It would be possible to determine what portion of a property settlement is necessary for support and to permit the nonemployee spouse to collect only that portion from the pension plan. Courts can and do make that determination in connection with bankruptcy proceedings and in tax proceedings. *See* n.13, *supra.* But when only the respective interests of the employee and nonemployee spouse in pension benefits are involved, the benefits of that approach do not equal the costs. In this context, it is better to have an easily applied rule that achieves substantial justice between husband and wife than a complicated approach which consumes resources better used for other purposes and which results in an outcome not significantly, if at all, more equitable.

Any burden that compliance with state community property laws might place on benefit plans does not create a conflict with § 206(d)(1) because that section does not protect any interest of plans as plans. Some anti-assignment statutes are designed

"to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the [non-assigning party] to deal only with the [assigning party]." *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 373, 70 S.Ct. 207, 211, 94 L.Ed. 171 (1949) (statute prohibiting assignment of tort claims against U.S. does not prohibit assignments by operation of law). If Congress intended § 206(d) to protect plans against these kinds of problems, it would not have permitted, as it did in § 206(d)(2), even voluntary and revocable assignments of up to ten percent of any benefit payment. The Court found no indication in the legislative history of ERISA that the prohibition of certain types of transfers by § 206(d) was designed to protect plans as well as participants and beneficiaries. In any case, the availability of interpleader under Fed. R.Civ.P. 22 enables plans to avoid the risk of double liability and exposure to substantial investigation and litigation expenses when each spouse claims or may claim a right to benefits under a judicial decree or a property settlement. Permitting the transfer of pension rights under state community property laws therefore interferes with no policy of § 206(d)(1).

Community property laws are as integral a part of a state's domestic relations laws as its support laws, so the federal policy of noninterference with state domestic relations policy (*see* pp. 924–925, *supra*) applies to both kinds of laws. Although "the community property principle rests [in part on] the business relationship of man and wife for their mutual monetary profit," *Wissner v. Wissner, supra*, 338 U.S. at 660, 70 S.Ct. at 400, marriage is not primarily a profit-making undertaking in community property states, just as it is not in common

---

15. For example, Cal.Civil Code § 4801(a) requires courts to consider the following circumstances in making an award of support:

"(1) The earning capacity and needs of each spouse.

"(2) The obligations and assets, including the separate property, of each.

"(3) The duration of the marriage.

"(4) The ability of the supported spouse to engage in gainful employment without interfer-

ing with the interests of dependent children in the custody of the spouse.

"(5) The time required for the supported spouse to acquire appropriate education, training, and employment.

"(6) The age and health of the parties.

"(7) The standard of living of the parties.

"(8) Any other factors which it deems just and equitable."

law states. The community property laws incorporate and establish the moral obligations of husband and wife as much as their financial ones.

The common law limited the obligation of the wage-earning spouse to the duty of support. Johnston, *Sex and Property: The Common Law Tradition, the Law School Curriculum, and Developments Toward Equality*, 47 N.Y.U.L.Rev. 1033, 1036 (1972). That limited view of marital obligations has been increasingly rejected in favor of the concept that "marriage is a joint enterprise and shared undertaking, based on a division of labor, which should entitle each spouse to a share of the family assets upon divorce." Inker, Walsh & Perocchi, *Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts*, 11 Fam.L.Q. 59, 61 & n.8 (1977). This premise that husband and wife contribute equally to the marital partnership, whether financially or otherwise, underlies the marital property laws not only of the eight community property states, *see* Prager, *The Persistence of Separate Property Concepts in California's Community Property System*, 1849–1975, 24 U.C.L.A.L.Rev. 1, 6–7 (1976), but also of the growing number of states (now at least thirty) which give each spouse the right to a fair and equitable share of marital property upon divorce. *See* Prager, *Sharing Principles and the Future of Marital Property Law*, 25 U.C.L.A.L.Rev. 1, 2–4, & nn. 10–13 (1977); Freed & Foster, *Divorce in the Fifty States: An Outline*, 11 Fam.L.Q. 297, 307–308 (1977); Foster & Freed, *Marital Property and the Chancellor's Foot*, 10 Fam.L.Q. 55, 58 & n.14 (1976). Only a dwindling minority of states adhere to the common law philosophy that the wage earner's obligation to his spouse is limited to the obligation of support and that the spouse with legal title to marital property general-

ly keeps it after divorce. *Id.*, at 57 & nn.9–12 and 58 & n.13; Freed & Foster, *Divorce in the Fifty States: An Outline*, 11 Fam.L.Q. 297, 307 (1977).

In ERISA, Congress did not adopt or reject either of these theories of community property. Congress presumptively takes a neutral position with respect to state community property laws, and only when those laws conflict with the policies of federal law does Congress preempt them. Preemption by ERISA of state community property laws would expose nonemployee spouses to the kind of risk from which ERISA is designed to protect the family unit and against which they cannot effectively protect themselves. Preemption would also cause a major change in the division of marital property which a large majority of states seek to achieve because pension benefits constitute a major asset of many marriages. Congress has not directly and clearly expressed its intent to cause these consequences, and neither the history nor the structure of ERISA compels that construction. The policy of § 206(d)(1) does not conflict with the recognition of the community interest of the nonemployee spouse in pension benefits payable from employee benefit plans covered by ERISA.

### B. *Preemption under § 514(a)*

■ Even if California's community property laws do not conflict with § 206(d)(1), they are nevertheless preempted if they relate to employee benefits plans within the meaning of § 514(a), which provides in relevant part that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[16] Federal legislation in a field may be

---

16. Section 514(a) provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter [concerning reporting, disclosure, vesting, funding and fiduciary duties] and subchapter III of this chapter [concerning plan termination insurance] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section

1003(a) of this title and not exempt under section 1003(b) of this title."

The last sentence of the subsection provides that it "shall take effect on January 1, 1975." Conversely, that section "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." Section 514(b)(1). Although the transfer from Ward to Noel of a

so pervasive that it precludes any state regulation of the same field even though the state and federal laws do not directly conflict. *See Malone v. White Motor Corp.,* —— U.S. ——, ——, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978).

Section 514(a) certainly was intended to have broad preemptive effect, and state laws which relate to employee benefit plans differently than ERISA relates to them are generally preempted. *Standard Oil Co. of California v. Agsalud,* 442 F.Supp. 695, 706–707 (N.D.Cal.1977). Section 514(a) was not, however, designed to preempt any state law with even the most tangential relation to ERISA. *Cf. Time Insurance Co. v. Dept. of Industry, Labor & Human Relations,* 46 U.S.L.W. 2369, 2370 (Wis.Cir.Ct. Jan. 3, 1978) (ERISA does not preempt state civil rights law applicable to benefit plans). The question is whether the California community property laws fall into this narrow category of laws which affect employee benefit plans but which do not relate to them within the meaning of § 514(a).

Section 514(a) does not preempt community property laws. Congress used § 206(d)(1) to prohibit transfers of interests in benefits to the degree that those transfers interfered with the policies of ERISA. If this specific provision permits such transfers under the community property laws, a general provision like § 514(a) does not prohibit them. The same reasons that make transfers to nonemployee spouses different from transfers to business creditors (*see* pp. 926–927, *supra*) make community property laws different from other laws which relate to employee benefit plans. The presumption " 'that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress,' " *Ray v. Atlantic Richfield Co., su-*

pra, 434 U.S. at 157, 98 S.Ct. at 994, quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), applies to preemption by § 514(a) just as it does to preemption by § 206(d)(1). The Court cannot find in § 514(a) the clear evidence of congressional intent to preempt state community property laws insofar as they relate to benefit plans that is necessary for a finding of preemption of state domestic relations laws.

This conclusion is consistent with *Standard Oil Co. of California v. Agsalud, supra,* 442 F.Supp. 695, where it was held that Hawaii's state health insurance law was preempted by ERISA. Regulation of benefit plans is an exercise of the police powers of states, but state regulation of benefit plans is not nearly as well established as state regulation of community property. To preclude state regulation of this latter area would involve a much more radical disturbance of " 'the federal-state balance,' " *Jones v. Rath Packing Co., supra,* 430 U.S. at 525, 97 S.Ct. 1305, quoting *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), than preclusion of state regulation of benefit plans. Accordingly, the presumption against preemption in the area of community property is correspondingly stronger.

A second basis for distinguishing *Standard Oil* involves the effect of preemption on individuals whom the state seeks to protect. Preemption of the Hawaii health insurance law does not prevent Hawaiian workers from bargaining for the benefits which the state statute sought to guarantee. Although part of the reason for the statute may have been to ensure that workers with little bargaining power would obtain those benefits, the intended beneficiaries of the statute were not rendered incapa-

40% interest in pension benefits occurred before that date, ERISA may still preempt Noel's state-created right to proceed against the Pension Plan. The Court assumes for purposes of this motion that Noel's cause of action against the Pension Plan arose after January 1, 1975, when Noel first notified the Plan of its obligation to her under the terms of the divorce decree. *See* Cal.Civ.Code § 5106 (plan has no

obligation to pay transferee of interest in benefits until receipt of written notice). The Court also assumes that the transfer of the pension benefits under the terms of the decree did not constitute an act within the meaning of § 514(b)(1). *See Bacon v. Wong,* 445 F.Supp. 1189, 1192 (N.D.Cal.1978) (distinction in § 514(b)(1) between causes of action arising and acts occurring before January 1, 1975).

ble of achieving the protection. The intended beneficiaries of the California community property laws would be placed at a significantly greater disadvantage by pre-emption. Preemption would deprive non-employee spouses of the share in marital assets which they indirectly helped to acquire, and it would leave them without effective remedies against their husbands, *see* nn.11 and 12, *supra.* It is more reasonable to believe that Congress was willing to tolerate the adverse consequences of preemption of state health insurance laws than the consequences of preemption of state community property laws.

For these reasons, California's community property laws do not relate to employee benefit plans within the meaning of § 514(a).[17]

## IV. *REMAND*

■ In addition to her claim against the Pension Plan, Noel seeks relief from Ward. The Court lacks pendent jurisdiction over this state claim, and even if it had pendent jurisdiction, it would be an abuse of discretion to exercise it.

Under the pendent jurisdiction doctrine of *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a federal court has discretion to hear a state claim joined with a federal claim which shares a "common nucleus of operative fact." The Court of Appeals for this Circuit has consistently refused to allow the joinder of pendent parties as well as pendent claims. *Ayala v. United States*, 550 F.2d 1196, 1197–1198 (9 Cir.) (citing cases), *cert. granted*, 434 U.S. 1058, 98 S.Ct. 1227, 55 L.Ed.2d 758 (1977). Because Ward is not a party to Noel's federal cause of action against the Pension Plan, her claim against Ward cannot be joined with her claim against the Plan.

Even if the pendent jurisdiction doctrine permitted the joinder of new parties, joinder of Ward would be improper because the claim against Ward has no nucleus of operative facts in common with the claim against the Plan. The Plan's and Ward's obligations to Noel under the divorce decree are completely separate, and recovery from Ward does not involve at all the existence of the transfer of his pension rights to Noel. Exercise of jurisdiction over the claims against Ward would not significantly promote economy of judicial administration.

Section 1441(c) of Title 28 of the United States Code permits under some circumstances the removal of an otherwise non-removable claim that is joined with a separate and independent claim which is removable if sued upon alone.[18] Under its § 1441(c) jurisdiction as well as its pendent jurisdiction, the Court has discretion to remand to state court state claims joined with federal ones. 14 Wright, Miller & Cooper, *supra*, § 3724, at 651–654 (§ 1441(c) jurisdiction); 13 Wright, Miller & Cooper, *supra*, § 3567, at 448–455 (pendent jurisdiction). Under the circumstances of this case, it is appropriate to remand Noel's claims against Ward to state court.

Because Noel's suit against Ward involves a different party and different issues than her suit against the Pension Plan, retention of jurisdiction over the state claim would conserve few if any judicial resources. *See supra.* Another reason to retain otherwise non-removable claims is to avoid deterrence of the exercise of the right to remove removable matters. 14 Wright, Miller & Cooper, *supra*, § 3724, at 654. Where the removing defendant is not a party to the otherwise non-removable claims, remand of them will not deter the removing defendant from exercising this

---

17. ERISA does not preempt state community property laws to the extent they authorize the transfer to the nonemployee spouse of her spouse's federal cause of action under § 502(a)(1)(B) as well as the transfer of the right to the benefits themselves. If ERISA permits the transfer of the latter, it permits the transfer of the former. If Congress intended to

permit divorced nonemployee spouses to receive their community interest in benefits directly from employee benefit plans, it is reasonable to conclude that Congress intended to give them the means to obtain the benefits which belong to them.

18. See note 8, *supra.*

right because the burden of defending separate actions in state and federal court is not imposed on him.

Retention of jurisdiction over the state claim would also encroach on the authority allocated to state courts in the federal system. Even when a federal court hears the federal aspects of a domestic relations lawsuit, the aspects involving only state matters should be left to the state as a "matter of policy and comity." *Buechold v. Ortiz, supra,* 401 F.2d at 373; *see Overman v. United States,* 563 F.2d 1287, 1292 (8 Cir. 1977) (remand of state claims involving domestic relations after federal claims resolved). Moreover, retention of jurisdiction over state claims unrelated to Noel's federal claims would raise a serious constitutional question: "if the federal cases defining the pendent jurisdiction doctrine reflect the outer limits of permissible federal subject matter jurisdiction, then [28 U.S.C. § 1441(c)] is unconstitutional if extended to" retention of a nonfederal claim in which diversity of citizenship is absent and which bears no relation to any federal question. Wright, Miller & Cooper, *supra,* § 3724, at 649–650 & nn.74–79 (footnotes omitted). Remand of the claims against Ward enables the Court to avoid this question.

## V. *ORDER*

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment against defendant Pension Plan is granted.

IT IS HEREBY FURTHER ORDERED that defendant Pension Plan's cross-motion for summary judgment is denied.

IT IS HEREBY FURTHER ORDERED that plaintiff's claims against defendant Ward Herbert Stone are remanded to the California Superior Court for the County of Alameda.

IT IS HEREBY FURTHER ORDERED that counsel for plaintiff shall prepare an appropriate form of judgment, obtain approval as to form from counsel for defendant Pension Plan, and submit it to the Court for execution within ten (10) days of the date of this Memorandum of Opinion.