SENCO OF FLORIDA, INC., and Robert N. Nichols and Dale R. Nichols, as Trustees of the Profit Sharing Plan for the Employees of Senco of Florida, Inc. and as Members of the Plan Committee of the Profit Sharing Plan for the Employees of Senco of Florida, Inc., Plaintiffs,

v.

Victoria L. CLARK and the Honorable Claude R. Edwards, Circuit Judge, Circuit Court for the County of Orange, State of Florida, Defendants.

No. 78–444–Orl–Civ–Y.

United States District Court,
M. D. Florida,
Orlando Division.

March 23, 1979.

Carter A. Bradford, Bradford, Tharp & Fletcher, Orlando, Fla., William H. Davis, Giles, Hedrick & Robinson, Orlando, Fla., for plaintiffs.

Emory H. Rosenbluth, Jr., Subin, Shams, Rosenbluth & Moran, Orlando, Fla., for defendants.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Chief Judge.

This cause came before the court for hearing on defendant's motion to consolidate with Case No. 78–593, defendant's motion to dismiss, and cross-motions for summary judgment.

The suit is for declaratory relief pursuant to 28 U.S.C. § 2201 and for a temporary and permanent injunction. This Court has jurisdiction under 29 U.S.C. § 1132(a)(2), (3)(e)(1), and (f).

## FACTUAL BACKGROUND

The marriage of Victoria L. Clark (defendant) and William G. Clark was dissolved by Final Judgment of Dissolution of Marriage dated July 25, 1977, amended by Amended Final Judgment of Dissolution dated November 30, 1977. *In Re: The Marriage of William G. Clark, Husband, and Victoria L. Clark, Wife*, Civil Action No. 77–1732 (Fla. 9th Cir. 1977) (hereinafter "In re: Clark"). Victoria Clark has subsequently obtained two judgments from the Ninth Circuit in the amounts of $6,033.14 and $11,998.39 for alimony and child support. Two orders granting writs of garnishment were issued by the same court on December 22, 1977 and February 28, 1978. The writs were directed to plaintiffs, Robert N. Nichols and Dale R. Nichols as trustees of the Profit Sharing Plan administered by Senco of Florida, Inc. (hereinafter "Senco"). Senco is a fiduciary of the Plan as defined by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (hereinafter "ERISA").

William G. Clark was an employee of Senco for approximately ten years. Upon his voluntary termination on August 12, 1977, William Clark had a vested interest in the Plan of 100% and the value credited to his account as of March 31, 1978, was $26,914.20.

## MOTION TO DISMISS

The defendant's motion to dismiss is based on five grounds. First, the defendant asserts that the amended complaint is barred by the Anti-Injunction Act, 28 U.S.C. § 2283. The Anti-Injunction Act provides that a federal court may not grant an injunction to stay proceedings in a state court except when expressly authorized by Congress or "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Although ERISA does not specifically authorize enjoining a state court proceeding, it does authorize civil actions by participants, beneficiaries, or fiduciaries "to enjoin any act or

practice which violates any provision of this subchapter or the terms of the plan . . ." 29 U.S.C. § 1132(a)(3). The test to be applied to determine whether Congress expressly authorized an exception to the Anti-Injunction Act is whether Congress has clearly created a federal right or remedy enforceable in a federal court of equity. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). The Congressional intent of the ERISA provision on alienation could be frustrated if the federal court were deprived of the power to enjoin proceedings in a state court from garnishing an employee's pension. *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D.N.Y.1978). Therefore, the only conclusion is that Congress must have intended ERISA to come within the "expressly authorized" exception of the Anti-Injunction Act.

The second ground that defendant raises is that the Amended Complaint fails to state a claim for declaratory relief. The rationale is that the state court can fully adjudicate the controversy. The third ground is related in that defendant argues that the state action has not been fully concluded. Neither of these grounds is a basis for this court to refuse jurisdiction when Congress has granted the federal court exclusive jurisdiction over the controversy. 29 U.S.C. § 1132(a)(2), (3). Unlike *Wong v. Bacon*, 445 F.Supp. 1177 (N.D.Cal. 1977) which was brought by a *participant* under 29 U.S.C. § 1132(a)(1)(B), this case is brought by a *fiduciary* under § 1132(a)(2), (3). Congress has provided for exclusive jurisdiction for this cause under § 1132(e)(1).

The fourth ground raised on the motion to dismiss is *forum non conveniens*. Defendant argues that the doctrine should be applied to prevent expensive and duplicitous litigation. The more convenient forum would be the state court. However, since Congress has granted exclusive jurisdiction over an ERISA dispute brought by a fiduciary, the inference can be drawn that Congress intended that the federal forum would be available for such fiduciary to avoid inconsistent interpretations of ERI-

SA. To dismiss for *forum non conveniens* would defeat this intent.

The final ground raised on the motion to dismiss is res judicata or collateral estoppel. The Honorable Claude R. Edwards, Circuit Judge of the Ninth Judicial Circuit, has entered an order dated November 9, 1978, in which he determined the issue whether the anti-alienation language in ERISA precluded garnishment for support of wife and dependents. *In Re: Marriage of William G. Clark*, No. 77–1732 (Fla. 9th Cir. 1978). This Order, however, added Senco and the members of the Plan Committee as parties to the suit and granted them leave to show cause why the committee should not terminate William Clark's interest in the plan and apply his benefits or rights to his dependent ex-wife and children. Senco filed a response to the Order to Show Cause, but removed the case to this court before further rulings could be issued. *See, In Re: Marriage of William G. Clark*, No. 78–593–Orl–Civ (M.D.Fla.1978). Therefore, the order does not appear to be a final judgment for purposes of res judicata or collateral estoppel for two reasons: first, the Order itself anticipates further pleadings, and second, the parties to this suit only became the same parties as those in the state suit after the Order had been issued. Therefore, the motion to dismiss on res judicata or collateral estoppel will be denied.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff and defendant have filed cross-motions for summary judgment. It appears from the record that there is no genuine issue as to any material fact. Rule 56(c), Federal Rules of Civil Procedure. The legal issue for determination by this Court is whether garnishment for child support or alimony of an employee's benefits in a plan qualified under ERISA is prohibited under federal law. Both ERISA and the Internal Revenue Code provide that such benefits are not alienable or assignable. ERISA, Section 1056(d)(1) provides:

> Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

The Internal Revenue Code, amended by ERISA, provides in 26 U.S.C. § 401(a)(13):

(13) A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated.

These two sections clearly indicate the decision by Congress that qualified pension plans cannot be alienable or assignable. Congress also clearly intended that ERISA should preempt the states in the regulation of these employee benefit plans. 29 U.S.C. § 1144. The Profit Sharing Plan of Senco provides in accordance with the aforesaid requirements:

"*Section 7.3.* No part of the assets of the Trust shall be used for or diverted to any purpose not for the exclusive benefit of the Participants and their beneficiaries at any time prior to the satisfaction of all rights and liabilities with respect to persons who shall be or have been Participants or beneficiaries hereunder, either by operation or termination of this Plan, by power of revocation or amendment, by the happening of any contingency, collateral agreement or any other means, and no part of the assets of the Trust shall be paid, distributed or made available to the Company at any time."

"*Section 9(a).* None of the benefits or rights under the Trust, as provided under the Plan, shall be subject in any manner to anticipation, alienation, sale, transfer or assignment, charge, pledge or encumbrance of any kind. Nor shall any such benefits or rights be liable for, or subject to attachment, executions, *garnishment, sequestration, or other legal, equitable or other processes, nor shall the same be subject to the debts, obligations, liabilities or torts of the participants or beneficiaries entitled to any such benefits or rights,* except as provided under the Plan or under the Trust, or as required by law." (emphasis supplied)

The district courts are divided as to whether there is an implied exception from the anti-assignment or alienation provisions of ERISA and the Internal Revenue Code for the support of dependent ex-wife and children. In *General Motors Corporation v. Townsend*, 468 F.Supp. 466 (E.D.Mich.1976), the district court held that the benefits provided by a retirement program which contained anti-alienation provisions in accordance with ERISA's requirements, 29 U.S.C. § 1056(d), were not subject to garnishment to satisfy a divorce judgment. Several recent district court decisions have reached a contrary result. *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D.N.Y.1978) held that ERISA's anti-assignment or alienation provisions do not bar the execution of valid state court support orders. The district court gave great weight to the brief submitted as *amicus curiae* by the Departments of Labor and Treasury as the departments with responsibility for enforcing the Act. The Department urged an exception from the anti-alienation provisions reasoning that execution of state court support orders was not intended to be within ERISA's scope. The court also gave great weight to the general congressional intent not to preclude enforcement of support decrees as evidenced by the exemption sections of the Social Security Act, 42 U.S.C. § 407, the Veterans Benefits Act, 38 U.S.C. § 3101(a) and the Railway Retirement Act, 45 U.S.C. § 231m. One judicial interpretation as to the intent of Congress in providing these exemptions for support of dependents is "to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief." *Schlaefer v. Schlaefer*, 71 App.D.C. 350, 112 F.2d 177 (1940). The United States District Court for the District of Connecticut has reached a similar result in *American Telephone and Telegraph Company v. Merry*, No. B–78–161 (D.C.Conn.1978).[1] The Honorable Jon O. Newman construed the non-assignment provisions of ERISA to per-

---

1. Affirmed by the United States Court of Appeals, Second Circuit, January 29, 1979 in an opinion which this court finds to fully support the decision made herein.

mit garnishment of plan benefits to satisfy alimony and support obligations.

In *Stone v. Stone*, 450 F.Supp. 919 (N.D. Cal.1978), on appeal to the Ninth Circuit, the district court determined that a state divorce decree requiring a pension plan qualified under ERISA to pay benefits directly to the nonemployee ex-spouse was not prohibited by either 1) the anti-alienation or assignment provision of ERISA, 29 U.S.C. § 1056(d)(1), or 2) the preemption provision, 29 U.S.C. § 1144. The court reasoned, as did the court in *Cartledge, supra,* that Congress has expressed a policy of noninterference with state domestic relations which requires a federal court to avoid construing a federal law to preempt such a state law unless specifically directed by Congress in the federal law. *Stone, supra* at 925. The court cited several examples of the willingness of federal courts to infer such exemptions to avoid conflicts with state domestic relations laws. *See Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950) (National Service Life Insurance Act); *Wetmore v. Markoe,* 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904) (Bankruptcy Act). The court also concluded that such an exemption would be consistent with the Congressional intent of protecting people who depend on the benefits for financial independence upon retirement. *Stone, supra,* at 926. *See* H.Rep.No.93–533, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 4639–4641; S.Rep.No.93–127, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 4838–4840. Support claims of an ex-spouse were distinguished from claims of business creditors in two ways: first, that Congress intended that ERISA protect employees *and their families* who will depend upon the benefits for security, but intended no such protection for business creditors, and; second, that the creditor has the choice not to extend credit to an employee whose main asset is in an employee benefit plan, whereas the spouse had no option except not to marry the person whose main asset is the benefit. *Stone, supra,* at 926. For these reasons, the *Stone* court concluded that the policy of § 1056(d)(1) does not conflict with the rec-

ognition of the community property interest of the nonemployee spouse in benefits from a pension plan qualified under ERISA.

The *Stone* court also determined that recognition of a state community property interest in an ERISA plan would not conflict with ERISA's provision, 29 U.S.C. § 1144, preempting all state laws regulating employee benefit plans. *Stone, supra,* at 933. A recent decision of the Supreme Court of the United States implies that it might reach a similar result. The Court refused to award to an ex-spouse a community property interest in benefits accruing under the Railroad Retirement Act of 1974 because Congress had specifically provided for the spouse. The Court indicated that the considerations would be different if the benefits were from a pension program which was merely regulated under ERISA. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 590, n. 24, 99 S.Ct. 802, 813, 59 L.Ed.2d 1 (1979). This statement indicates that the Supreme Court might allow the assertion of state community property interests in ERISA plans notwithstanding ERISA's preemption provision, 29 U.S.C. § 1144, which states in pertinent part:

> (a) [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan [under ERISA].

The Department of Labor took the position in its brief as *amicus curiae* filed in *Stone, supra,* on appeal to the Ninth Circuit, that the legislative intent was for an absolute preemption in the regulation of benefit plans in order to avoid administrative problems that would result from inconsistent state laws. The Department in its brief in *Stone* argues that ERISA absolutely preempts community property laws to the extent of conflict, but that the Ninth Circuit should extend an implied exception to ERISA's anti-assignment provisions for enforcement of a state court decree to satisfy a claim under community property law. The *Hisquierdo* decision, however, indicates that even the preemption provision was not

so absolute as to preclude assertion of a community property interest in an employee benefit plan under ERISA. This court is persuaded that the same rationale would exist for allowing execution of state court support orders on ERISA plan benefits notwithstanding the preemption provision.

 Absent clarification by the Supreme Court of the United States or by Congress, this court is persuaded that the intent of Congress in enacting ERISA was to protect the employees and their families from bargaining away the benefits provided by employee benefit plans qualified under ERISA. This intent would be furthered, not hindered, by allowing the execution of state court support orders on employee benefits in benefit plans qualified under ERISA. This rationale for allowing an exemption for state court support orders from ERISA's anti-alienation or assignment provision, 29 U.S.C. § 1056(d)(1) also applies to the parallel provision in the Internal Revenue Code 26 U.S.C. § 401(a)(13), which was enacted to implement ERISA. Retirement Income Security Act, Pub.L.No.93–406, § 1021(d). Since the Internal Revenue Code provision was implementing the other ERISA provisions, the Congressional intent can be presumed to be the same and further discussion would be redundant.

 Therefore this Court concludes that neither ERISA, 29 U.S.C. §§ 1056(d)(1), 1144, nor the Internal Revenue Code, 26 U.S.C. § 401(a)(13), preclude the postjudgment garnishment pursuant to a state court support order of the employee benefits of a qualified employee benefit plan.[2]

## MOTION TO CONSOLIDATE

 Defendants have filed a motion to consolidate this case with case No. 78–593–

Orl–Civ. By order entered February 12, 1979, this Court remanded *Clark v. Nichols*, Case No. 78–593–Orl–Civ. to the state court. Therefore the motion to consolidate will be denied.

---

2. This conclusion does not reach the issue as to when the employee benefits may be garnished and how much of the funds may be garnished. Considering that the issue has been fully presented to the Florida Circuit Court in *In Re: The Marriage of William G. Clark, Husband and Victoria L. Clark, Wife and Robert L. Nichols and Dale R. Nichols, Trustees of Profit Sharing Plan for Employees of Senco of Flori-* da, Inc., Garnishee, Civil No. 77–1732, and that the issue is integral to a domestic matter of family support obligations, this Court is of the opinion that it should exercise its discretion by denying a declaratory judgment on this issue since it may be fully adjudicated in the suit in state court which was pending at the time this action was instituted. *See* 1A Moore's Federal Practice, 2d ed. ℣ 0.220.