**UNITED STATES STEEL CORPORA-TION PLAN FOR EMPLOYEE INSUR-ANCE BENEFITS; USX Corporation, as plan sponsor; United States Steel and Carnegie Pension Fund, plan administrator; and United States Steel Insurance Benefit Trust Fund**

v.

**Glenn MUSISKO and All Others Similarly Situated to Glenn Musisko, and The Honorable Silvestri Silvestri in his official capacity as Judge of the Court of Common Pleas of Allegheny County, Pennsylvania.**

**Appeal of Glenn MUSISKO, and all others similarly situated to Glenn Musisko, Appellant in No. 89-3161.**

**Appeal of The Honorable Silvestri SIL-VESTRI, Appellant in No. 89-3162.**

**Nos. 89-3161, 89-3162.**

United States Court of Appeals, Third Circuit.

Argued July 21, 1989.

Decided Sept. 21, 1989.

Joseph M. Zoffer (argued), Zoffer, Dillman, Hackney, Friedman & Wedner, Pittsburgh, Pa., for appellants, Glenn Musisko and all others similarly situated.

Howard M. Holmes (argued) and Charles W. Johns, Philadelphia, Pa., for appellant, the Honorable Silvestri Silvestri.

Martha Hartle Munsch (argued) and Beth L. Balzer, Reed Smith Shaw & McClay and James T. Carney, USX Corp., Pittsburgh, Pa., for appellees.

Before STAPLETON, SCIRICA and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

This appeal challenges a United States District Court's entry of an injunction and declaratory judgment directing a state court to apply federal law in a pending lawsuit. The state court action is a claim for benefits due under a welfare plan assertedly within the ambit of the Federal Employee Retirement Income Security Act (ERISA). We conclude that in the circumstances here the district court's orders are barred by the Anti–Injunction Act. Accordingly, we will reverse.

## I.

### THE FACTUAL BACKGROUND

This complicated litigation began in the summer of 1982 when Glenn Musisko, injured in a non-work related automobile accident, filed a simple claim for sickness and

accident benefits. As an employee of USX Corporation, Musisko was a participant in the company's Program of Insurance Benefits, negotiated as part of a collective bargaining agreement. Included in the program was a group policy providing for weekly disability payments.

Soon after his accident, Musisko applied for benefits under the policy, but the Equitable Life Assurance Society—the Plan's insurer—notified him that it denied his claim. The insurer explained that the Plan benefits were offset by payments Musisko had received under his no-fault automobile insurance policy. The letter of denial, written on Equitable stationery, advised that no payments would be made "since the benefit paid for wage loss through your auto carrier exceeds the benefit that you would be entitled to receive under" the USX program. Equitable's policy with the United States Steel Company trust fund was a "stop-loss" agreement—essentially a "deductible" arrangement under which the insurer paid claims on the employer's behalf and provided a defense to suits brought by a beneficiary.

A month later, in October 1982, Musisko filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania, to challenge this denial. Musisko named Equitable as the sole defendant. He later amended his complaint to assert a class action, but certification was held in abeyance.

The Common Pleas Court entered summary judgment against Musisko, and he appealed to the Pennsylvania Superior Court. The appellate court reversed, directing that judgment be entered against Equitable. *Musisko v. Equitable Life Assurance Soc'y*, 344 Pa.Super. 101, 496 A.2d 28 (1985). In its opinion, the Superior Court applied the common law rule of contract construction that an ambiguous term be interpreted against the drafter. That principle led the court to hold that the

offset proviso did not clearly exclude coverage for wage losses in excess of that recovered under the automobile insurance policy. The Pennsylvania Supreme Court denied allocatur.

On remand, the Court of Common Pleas certified the case as a class action in January 1987, and 225 USX employees opted into the class. The federal plaintiffs assert that only at this point did they become aware of the Musisko state court litigation. In a letter dated August 24, 1987, Equitable's lawyer wrote to USX counsel advising of the insurer's intention to amend the answer and raise the defense of preemption under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. The Common Pleas docket, however, records Equitable's withdrawal of its motion to amend its answer on October 23, 1987.

In November 1987, the case now before us began in the district court, with plaintiffs seeking to void the state judgment and to compel ERISA's application to the state lawsuit. The four federal plaintiffs are the United States Steel Corporation Plan for Insurance Benefits; the Plan's sponsor, USX Corporation (formerly United States Steel Corporation); the Plan's administrator, United States Steel and Carnegie Pension Fund; and United States Steel Insurance Benefit Trust, the source of benefit payments. Plaintiffs sought injunctive and declaratory relief against Musisko, the class claimants, and the state trial judge.

The federal complaint asserts that the Pennsylvania courts violated ERISA by failing to give effect to the statute's preemption provision. *See* 29 U.S.C. § 1144(a). In the district court, plaintiffs contended that the state courts ignored ERISA preemption by permitting Musisko to maintain his cause of action after he neglected to pursue the grievance procedure set out in the Plan and the collective bargaining agreement.[1] Accordingly,

---

1. Section 10 of the Plan provides that, in the event a dispute over a claim arises, "the difference may be processed as an insurance grievance under the provisions of the basic labor agreement applicable to insurance grievances."

Section 19 of the collective bargaining agreement sets out the union's grievance procedure, noting that it "shall apply" to the Plan. This section further states that unless a grievance under the Plan is timely appealed, "it shall be

plaintiffs argued that ERISA required that the state judgment be set aside.

Plaintiffs also contended that the state courts erred in applying common law rules of construction to the ERISA dispute. They maintained that the theory applied by the Pennsylvania Superior Court—interpreting a contract against the drafter—was a state law principle preempted by ERISA.

The district court agreed that ERISA preempted state law, and issued a declaration to that effect. The court also enjoined Musisko, the class, and the state trial judge "from proceeding on the matter filed at No. 7797 of 1982, in the Court of Common Pleas of Allegheny County, Pennsylvania, under any law other than ERISA."

In this appeal, Musisko and the state trial judge have collectively asserted numerous theories in support of reversal.[2] We find it necessary to discuss only one, the Anti–Injunction Act, because we consider it dispositive of this appeal.

## II.

### THE HISTORICAL BACKGROUND OF THE ACT

The Anti–Injunction Act reads: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This statute, with a venerable lineage that postdates the Bill of Rights by a mere two years, is designed to avert needless and unseemly friction between state and federal courts. *Mitchum v. Foster,* 407 U.S. 225, 232–33, 92 S.Ct. 2151, 2156–57, 32

L.Ed.2d 705 (1972); *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 146, 92 S.Ct. 373, 378, 30 L.Ed.2d 328 (1971); *Leiter Minerals, Inc. v. United States,* 352 U.S. 220, 225, 77 S.Ct. 287, 290, 1 L.Ed.2d 267 (1957); *Toucey v. New York Life Ins. Co.,* 314 U.S. 118, 129, 62 S.Ct. 139, 141, 86 L.Ed. 100 (1941). Because the district court's order in this case raises the spectre of just such abrasiveness between the two judicial systems, we turn to this statute and its historical development.

According to James Madison's notes, the delegates to the Constitutional Convention evidently had little hesitancy in approving the concept of a federal judiciary. "[O]n motion to agree to the first clause namely 'Resolved that a National Judiciary be established' It passed in the affirmative nem. con. [none opposed]" 2 *1787: Drafting the U.S. Constitution* 1313 (W. Benton ed. 1986) (notes of June 4, 1787).

The delegates' initial assent, however, proved ephemeral, and a clash between the federalists and antifederalists over Article III erupted when the time came to decide the organization of the new judicial establishment. Satisfied with the commitment of the state courts and firm in the belief that separate national tribunals would be superfluous, the antifederalists opposed the creation of any lower federal courts. The federalists, in contrast, sought the chartering of a complete federal judicial structure in the Constitution itself. *See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 285, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234 (1970). *See also* C. McGowan, *The Organization*

---

deemed to have been settled and no appeal therefrom shall thereafter be taken." Because the allotted appeal time has passed, the federal plaintiffs conclude that Musisko was without a remedy.

As a corollary, the federal plaintiffs assert that, in an earlier grievance by another USX worker, the Arbitrators issued a ruling adverse to Musisko's position that would be binding on a subsequent arbitration panel.

**2.** Musisko, for himself and all those similarly situated, argues that the federal plaintiffs lacked standing in the district court, and that the re-

quested relief is foreclosed by waiver, laches, unclean hands, equitable estoppel, res judicata, and collateral estoppel. The state judge asserts that the plaintiffs' action fails in the absence of standing and an Article III case or controversy; that the district court lacked constitutional jurisdiction to review a final judgment entered in the state court system; that the district court's order offended the Full Faith and Credit Clause; that the Anti–Injunction Act proscribes federal intervention; that discretionary concepts of federalism and comity compel abstention; and that res judicata and equitable preclusion bar recovery.

*of Judicial Power in the United States* 19–22 (1969).

To reduce opposition to a national judiciary, especially one including inferior tribunals, the delegates authorized in the Constitution only a Supreme Court, reserving for Congress the creation of lower federal courts. U.S. Const. art. III, § 1; *Palmore v. United States,* 411 U.S. 389, 400–01, 93 S.Ct. 1670, 1677–78, 36 L.Ed.2d 342 (1973); *Insurance Co. v. Dunn,* 86 U.S. (19 Wall.) 214, 226, 22 L.Ed. 68 (1873). *See* R. Carp & R. Stidham, *The Federal Courts* 2 (1985). Although this political compromise anticipated the later formulation of federal district courts, the Founders contemplated that federal jurisdiction would be concurrent in the state courts. As explained during the ratification process, "When ... we consider the state governments and the national governments, as they truly are, in the light of kindred systems, and as parts of ONE WHOLE, the inference seems to be conclusive, that the state courts would have a concurrent jurisdiction in all cases arising under the laws of the union, where it was not expressly prohibited." *The Federalist* No. 82, at 555 (A. Hamilton) (J. Cooke ed. 1961).

Ratification, however, was not a foregone conclusion. "The judiciary article, which had aroused only relatively minor disagreement in the Convention, became a storm center of controversy in the ratification debates." P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, *Hart & Wechsler's The Federal Courts and the Federal System* 20 (3d ed. 1988). Among the proposed amendments in response to the Convention's draft, was "the elimination of any Federal Courts of first instance, or, at all events, the restriction of such original Federal jurisdiction to a Supreme Court with very limited original jurisdiction." *Id.* (quoting Warren, *New Light on the History of the Federal Judiciary Act of 1789,* 37 Harv.L.Rev. 49, 56 (1923)).

This hostility towards infringement on state sovereignty prompted the first Congress to vest only limited jurisdiction in the lower federal courts. The Judiciary Act of 1789 gave no federal tribunal other than the United States Supreme Court the power of direct review over state cases implicating federal rights. Judiciary Act of 1789, § 25, 1 Stat. 73, 85–86. *See* 28 U.S.C. § 1257(a). Indeed, the jurisdiction of the inferior federal courts was so spare that not until 1875 were they given general, but non-exclusive, jurisdiction in federal question cases. *See* Act of Mar. 3, 1875, 18 Stat. 470; *Amalgamated Clothing Workers v. Richman Bros. Co.,* 348 U.S. 511, 518, 75 S.Ct. 452, 456, 99 L.Ed. 600 (1955). *See generally* C. McGowan, *supra,* at 23–29. Before that time, vindication of federal rights was entrusted to the state courts.

To insure the independence of the state courts from the newly-created federal tribunals, Congress in 1793 enacted the predecessor to the present Anti–Injunction Act. *See* M. Redish, *Federal Jurisdiction: Tensions in the Allocation of Judicial Power* 270 (1980). As originally approved, this statute directed: "nor shall a writ of injunction be granted [by a federal court] to stay proceedings in any court of a state." Act of Mar. 2, 1793, § 5, 1 Stat. 335. *See* J. Story, *Commentaries on the Constitution of the United States* § 914 (1833).

The Act was amended in 1874 to read: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Rev.Stat. § 720 (1875) (codified at 28 U.S.C. § 379 (repealed)). The current language, adopted in 1948 to correct what was perceived as an errant result in *Toucey v. New York Life Ins. Co.,* 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), "is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between state and federal courts." *Richman Bros.,* 348 U.S. at 518, 75 S.Ct. at 457.

The general rule remains today one of non-intervention. The Anti–Injunction Act, "a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal

and state courts," represents a "considered judgment as to how to balance the tensions inherent in such a system." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, ——, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988).

Inappropriate intervention breeds friction, but federal restraint facilitates the smooth and orderly operation of the dual judicial structure. Providing the means for accomplishing this objective, the Anti–Injunction Act sets out the "lines of demarcation between the two systems." *Atlantic Coast Line*, 398 U.S. at 286, 90 S.Ct. at 1743. As the Supreme Court has admonished, "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." *Id.* at 287, 90 S.Ct. at 1743. *See Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 525, 106 S.Ct. 768, 770, 88 L.Ed.2d 877 (1986); *Richman Bros.*, 348 U.S. at 521, 75 S.Ct. at 458.

### A.

### ELEMENTS OF THE ACT

■ The Anti–Injunction Act applies when (1) a court of the United States (2) grants an injunction (3) to stay proceedings (4) in a state court. *See* 17 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4222 (1988). Elements 1, 2, and 4 are self-evident in this case. An argument may be made, however, that the third element is absent because the district judge did not order a "stay of the state court proceedings" that suspended or terminated the state case. But such a literal construction of the third element mistakes title for effect. The practical result of the district judge's order here was to cast doubt on the effectiveness of the Pennsylvania Superior Court's ruling and on any judgment that might result from it. The district court's order could effectively prevent the state trial judge from proceeding in accordance with the Superior Court's direction. The injunction, by obstructing and interfering with the state courts' process, thus has the effect of a stay within the meaning of the statute.

The Supreme Court reached a similar conclusion in *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). There, a state court had enjoined a union from picketing a railroad. The union repaired to federal court, and persuaded the district judge to enjoin the railroad "from giving effect to or availing [itself] of the benefits" of the state court order. The Supreme Court agreed that, for section 2283 purposes, the federal injunction constituted a stay of state court proceedings. "[T]he prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." *Id.* at 287, 90 S.Ct. at 1743.

■ Here, in addition to and as an alternative to its injunction, the district court issued a declaratory judgment "that application of state law to the state court action is pre-empted by ERISA." This declaratory relief is not insulated from the Anti–Injunction Act's review. The prohibition of section 2283 is not "an anachronistic, minor technicality, easily avoided by mere nomenclature or procedural sleight of hand." *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989). Where, as here, declaratory relief would produce the same effect as an injunction, a declaratory judgment is barred if section 2283 would have prohibited an injunction. *Thiokol Chemical Corp. v. Burlington Indus., Inc.*, 448 F.2d 1328, 1332 (3d Cir.1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972). *See* 17 C. Wright, A. Miller, & E. Cooper, *supra*, § 4222, at 503–04.

### B.

### THE "EXPRESSLY AUTHORIZED" EXCEPTION

The district court's order appealed from contains the four Anti–Injunction Act elements. Our next step, then, is to determine whether the order comes within any

of the three exceptions provided in the statute.

The absolute bar against federal injunctive measures contemplated by the Act is "qualified only by specifically defined exceptions," *Richman Bros. Co.,* 348 U.S. at 516, 75 S.Ct. at 455,—exceptions to be read narrowly: not "enlarged by loose statutory construction," *Chick Kam Choo,* 486 U.S. at ——, 108 S.Ct. at 1689, or "whittled away by judicial improvisation," *Richman Bros.,* 348 U.S. at 514, 75 S.Ct. at 454. Moreover, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Lines,* 398 U.S. at 297, 90 S.Ct. at 1748. Unless one of the exceptions governs the order, federal courts are "absolute[ly] prohibit[ed]" from enjoining a state judicial proceeding. *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977); *Mitchum,* 407 U.S. at 228–29, 92 S.Ct. at 2154–55.

The Anti–Injunction Act sets out three circumstances in which its bar will not apply: where the injunction (1) is expressly authorized by Congress; (2) is necessary in aid of the federal court's jurisdiction; or (3) is necessary to protect or effectuate the federal court's judgment. 28 U.S.C. § 2283. Only the first exception—expressly authorized by Congress—is asserted here.

In the leading case construing the expressly authorized exception, *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the Court commented that the preempting federal statute need not contain a direct reference to section 2283 nor specifically provide for the district judge's issuance of an injunction against state proceedings. *Id.* at 237, 92 S.Ct. at 2159. *See Richman Bros.,* 348 U.S. at 516, 75 S.Ct. at 455 (no prescribed formula required). Instead, the pertinent test is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum,* 407 U.S. at 238, 92 S.Ct. at 2160.

In *Mitchum* the Court ruled that 42 U.S.C. § 1983 expressly authorized federal injunctions against state courts, and thus was an exception to the Anti–Injunction Act. In reaching that result, the Court relied principally on section 1983's legislative history, which chronicled explicit congressional concern over the failure of state courts to enforce constitutional rights during the Reconstruction Era.

Five years after *Mitchum* was decided, the Court in *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), held that the Clayton Act, 15 U.S.C. § 26, was not an express exception to the Anti–Injunction Act. In a plurality opinion, four Justices noted that the clear congressional distrust with state court enforcement apparent in section 1983's legislative history was "wholly lacking" in the antitrust context. *Id.* at 632–33, 97 S.Ct. at 2888 (plurality opinion).[3]

The Supreme Court has not had the occasion to consider whether Congress expressly intended ERISA to authorize federal injunctions against state court proceedings. The question, then, is an open one whose resolution necessitates a review of the pertinent ERISA provisions.

ERISA authorizes a beneficiary of a plan to bring a civil action to recover benefits

---

**3.** The Court in *Mitchum* noted six instances of permissible federal injunctions against state proceedings: (1) removal from state to federal court; (2) limitations on shipowner liability; (3) federal interpleader actions; (4) farm mortgages; (5) federal habeas corpus proceedings; and (6) price control legislation. *Mitchum,* 407 U.S. at 234–35 nn. 12–17, 92 S.Ct. at 2158 nn. 12–17.

In addition, the Courts of Appeals have ruled that the Longshore and Harbor Workers' Compensation Act is not an expressly authorized exception, *Texas Employers' Ins. Ass'n. v. Jackson,* 862 F.2d 491, 498 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989), nor are the federal securities laws, *Piambino v. Bailey,* 610 F.2d 1306, 1331–33 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980); *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 531–35 (6th Cir. 1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

due. 29 U.S.C. § 1132(a)(1)(B). Such suits may be brought either in a state court of competent jurisdiction or in a federal district court. 29 U.S.C. § 1132(e)(1). Musisko instituted just such a civil action in the Court of Common Pleas, where Judge Silvestri was entitled to exercise his concurrent state court jurisdiction.

ERISA also authorizes participants, beneficiaries, and fiduciaries to file a civil action "to enjoin any act or practice which violates any provision of this subchapter." 29 U.S.C. § 1132(a)(3). These actions must be brought in the United States District Courts, which have exclusive jurisdiction in such cases. 29 U.S.C. § 1132(e)(1).

Conspicuously absent from the language of this ERISA injunction provision is any suggestion of its use by federal courts against state tribunals. The lack of a specific reference is not determinative, but in such absence the legislative history must contain adequate proof that "Congress recognized and intended the statute to authorize injunction of state-court proceedings." *Vendo Co.*, 433 U.S. at 633, 97 S.Ct. at 2888 (plurality opinion).

The legislative history of 29 U.S.C. § 1132(a)(3) is replete with references to Congress' desire that beneficiaries have adequate remedies to vindicate their rights under an employee benefit plan. *See, e.g.*, H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 326, *reprinted in* 3 Committee Print, *Legislative History of the Employee Retirement Income Security Act of 1974* 4593 (1976) [hereinafter *Legislative History*] *and* 1974 U.S.Code Cong. & Admin. News 4639, 5106; S.Rep. No. 383, 93d Cong., 1st Sess. 10 (1973), *reprinted in* 1 *Legislative History* at 1078 *and* 1974 U.S. Code Cong. & Admin.News at 4898. *See* 119 Cong.Rec. 3,0005 (Sept. 18, 1973) (statement of Sen. Williams), *reprinted in* 2 *Legislative History* at 1604 ("For the first time, plan participants would also be given the right to seek appropriate relief in both Federal and State courts against fiduciaries for violations committed by them with respect to a pension plan").

Nowhere in the comprehensive legislative record is there any indication that Con-

gress intended to authorize injunctions against state courts. Indeed, the very act of delegating concurrent jurisdiction to the state courts for resolution of beneficiaries' claims is evidence of Congress' satisfaction that state tribunals would fairly and competently adjudicate such cases. In contrast to the misgivings about state courts articulated in section 1983's legislative history, *see Mitchum*, 407 U.S. at 238–42, 92 S.Ct. at 2159–62, the grant of jurisdiction to the state judiciaries to resolve ERISA claims represents a congressional vote of confidence.

The ERISA enforcement section's language and its legislative history are inadequate to demonstrate a congressional desire to defeat the bar of section 2283. The federal plaintiffs have failed to produce "sufficient evidence in the legislative history demonstrating that Congress recognized and intended the statute to authorize injunction of state court proceedings." *Vendo Co.*, 433 U.S. at 633, 97 S.Ct. at 2888 (plurality opinion). The Anti–Injunction Act was directed at preventing a federal "appellate review function in litigation in which the state and federal courts had equal competence." *Id.* at 658 (Stevens, J., dissenting). The district court's order attempts to exercise just such an impermissible review function in this case.

■ Plaintiffs cite *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), as support for their assertion that ERISA was intended to entirely preempt the field of employee benefit plans. *See also Shiffler v. Equitable Life Assurance Soc'y*, 838 F.2d 78, 81 (3d Cir.1988). There are some exceptions to that proposition, *see Mackey v. Lanier Collections Agency & Serv., Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *FMC Corp. v. Holliday*, 885 F.2d 79 (3d Cir.1989), but even if it were all-inclusive, the fact of preemption does not control application of the Anti–Injunction Act.

■ A federal court may not enjoin state court proceedings merely because they "in-

vade an area pre-empted by federal law even when the interference is unmistakably clear," *Chick Kam Choo,* 486 U.S. at ——, 108 S.Ct. at 1691, or where the "incursion upon a federally pre-empted domain dislocates the federal scheme as a whole," *Richman Bros.,* 348 U.S. at 517, 75 S.Ct. at 456. The fact that the state proceeding presents a preemption issue does not alter the respect due the state tribunal. "[T]he proper course is to seek resolution of that issue by the state court." *Chick Kam Choo,* 486 U.S. at ——, 108 S.Ct. at 1691.[4]

The federal plaintiffs also rely on several cases applying the Anti–Injunction Act in the ERISA context. In *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980), the Court of Appeals for the Sixth Circuit held, in a case involving state garnishment proceedings, that ERISA's enforcement section was an exception to the Anti–Injunction Act. In that case a fiduciary, the trustee of an employee pension plan, instituted a federal suit to challenge the enforcement of a state court's writ of garnishment obtained by a beneficiary's creditor. The Court of Appeals noted that the fiduciary was not a party to the state court proceedings, and could not have raised its objections to garnishment there.

On those facts, the Court of Appeals concluded that where a state court action makes it impossible for a fiduciary to carry out its responsibilities under ERISA, the Anti–Injunction Act does not apply. *Id.* at 459. Although we have some reservations about that ruling, we are convinced that the important factual differences between that case and this one—particularly in the type of plan and the nature of the relationship between the federal plaintiffs and their insurer Equitable—make *Buha* distinguishable.

The Court of Appeals for the Second Circuit in *Gilbert v. Burlington Indus., Inc.,* 765 F.2d 320 (2d Cir.1985), *aff'd,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558

(1986), held that the Anti–Injunction Act did not preclude a plan administrator from obtaining injunctive relief against a state administrative proceeding. Without discussion, the Court concluded that even if section 2283 applied to administrative proceedings, which are often circumstance dependent, *see New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* —— U.S. ——, 109 S.Ct. 2506, 2517–20, 105 L.Ed.2d 298 (1989), the requested injunction fell within the expressly authorized exception. *Id.* at 329. In the absence of any explanation from the Court why it reached that conclusion, we are not swayed by it.

We do not consider the remaining case citations persuasive in the circumstances here. The Court of Appeals for the Second Circuit in another case acknowledged the *Buha* ruling in an ERISA appeal, but resolved a claim by a beneficiary on abstention grounds without having to consider section 2283. *Levy v. Lewis,* 635 F.2d 960, 967 (2d Cir.1980). In a second phase of the case, the Court denied a claim for breach of fiduciary duties on the merits. *Id.* at 967–68. *See also Senco of Florida, Inc. v. Clark,* 473 F.Supp. 902 (M.D.Fla.1979) (injunction denied on merits); *Cartledge v. Miller,* 457 F.Supp. 1146 (S.D.N.Y.1978) (same).

## C.

## THE "STRANGER" EXCLUSION

■ Finally, the federal plaintiffs suggest, somewhat tentatively and obliquely, that they are "strangers to the state court litigation," and consequently, that section 2283 is not applicable. This exclusion from the Anti–Injunction Act was recognized in *County of Imperial v. Munoz,* 449 U.S. 54, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980), and *Hale v. Bimco Trading, Inc.,* 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771 (1939). The Supreme Court explained in those opinions

---

**4.** The Pennsylvania courts have demonstrated no reluctance in meeting their obligation to follow federal law. In several opinions, the Superior Court has acknowledged and applied ERISA preemption. *See, e.g., Smith v. Crowder Jr. Co.,* 280 Pa.Super. 626, 421 A.2d 1107 (1980); *Goldberg v. Caplan,* 277 Pa.Super. 47, 419 A.2d 653 (1980).

that the Anti–Injunction Act will not apply if the federal litigants were "strangers" to the state court proceedings. *Munoz,* 449 U.S. at 59-60, 101 S.Ct. at 292-93; *Hale,* 306 U.S. at 377–78, 59 S.Ct. at 526-27.

The term "stranger" describes a litigant who, neither a party nor in privity with a party to the state court action, is not bound by those previous proceedings. *Munoz v. County of Imperial,* 667 F.2d 811, 814–15 (9th Cir.) (on remand from Supreme Court), *cert. denied,* 459 U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982); *Garcia v. Bauza–Salas,* 862 F.2d 905, 908 (1st Cir.1988). The collateral estoppel concept of "privity" generally guides the decision whether a federal litigant is a "stranger" under the Anti–Injunction Act. *See Pelfresne v. Village of Williams Bay,* 865 F.2d 877, 881 (7th Cir. 1989).

In *Munoz* and *Bimco Trading,* the injunctive type of state court relief with effects extending beyond the immediate parties was substantially different from the monetary damages sought in the state court here. If their funds are not at risk in the state court proceedings, it is dubious that the federal plaintiffs can establish the personal stake required to give them Article III standing. On the other hand, if federal court standing is based on liability for financial loss incurred in the state court suit, that same exposure is an indicia of privity.

Consequently, we have serious reservations that the stranger exclusion is applicable in a situation where the federal plaintiffs interest in enjoining the state damage suit depends entirely on whether they are in privity with the state defendant. Assuming, without deciding the exclusion's applicability, we conclude that Equitable is in privity with the federal plaintiffs and the Anti–Injunction Act therefore applies.

The federal plaintiffs here were not parties to the state court proceedings but the record establishes privity in connection with the issues relevant to the Musisko claims. The Restatement of Judgments summarizes that a litigant "who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is ... [i]nvested by the person with authority to represent him in an action...." Restatement (Second) of Judgments § 41(1)(b) (1982). This principle rests not only on the beneficiary-fiduciary relationship, but extends to the principal-agency relationship as well. *See Temple v. Lumber Mut. Casualty Ins. Co.,* 250 F.2d 748, 752 (3d Cir.1958) (insurer in privity with insured); *Dally v. Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co.,* 374 Pa. 476, 97 A.2d 795, 796 (1953) (insurer bound by proceeding defended by insured).

The Equitable policy provides that the insurance company "shall have the right to determine the amount of benefits, if any, payable to an employee from the Policyholder's funds and the Policyholder agrees to accept and follow such determination." In the event of legal action by an employee for Plan benefits, Equitable is contractually obliged to "undertake on behalf of the Policyholder or the Employer the defense of such action and shall pay any judgment rendered therein." The policy grants Equitable the right to settle any such legal action, "when it deems it expedient to do so," and directs reimbursement to Equitable "for the portion of any such judgment or settlement paid from the Society's funds which represents an amount of benefits payable from the Policyholder's funds."

The facts of record thus establish that Equitable was entitled to act on behalf of the federal plaintiffs in the Musisko matter, and was bound to assert their interests in defending against the claims. To the extent that the claims' value do not exceed the "deductible" amount, the payments must ultimately be paid with the trust fund assets. Under the unambiguous terms of the policy, the federal plaintiffs would be bound by an adverse judgment against Equitable in the state court litigation; they

have produced no proof nor contended otherwise. We, therefore, accept Musisko's assertion that privity exists between the federal plaintiffs and Equitable. Plaintiffs here are not strangers to the state court litigation, and are not outside the ambit of the Anti–Injunction Act.

### D.

### CONCLUSION

To summarize, we have determined that the state court had concurrent jurisdiction over the claim Musisko raised; that ERISA's legislative history reveals no congressional desire that injunctions issue against state courts; and that no bar precluded presentation of the federal plaintiffs' position in the state courts. Accordingly, we hold that the Anti–Injunction Act proscribes the relief awarded here.[5]

The order of the district court will be reversed and the case remanded with instructions that judgment be entered for defendants Musisko, the class, and the state trial judge.

---

5. Because we find the Anti–Injunction Act's bar to be dispositive, we need not address the likely determinative effect the abstention doctrine might have in this case. See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, —— U.S. ——, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Nor need we assess the possible applicability of the Rooker–Feldman doctrine—if the federal claims presented to the district court are "inextricably intertwined" with the merits of a judgment rendered by the state court, "then the district court is in essence being called upon to review the state-court decision. This the district court may not do." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483–84 n. 16, 103 S.Ct. 1303, 1315 n. 16, 75 L.Ed.2d 206 (1983). See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).